## Commonwealth v. Mentley

*Jonelle H. Pepple, assistant district attorney,* for the Commonwealth.

*Gary L. Snyder,* for defendant.

HORN, *J.,* September 12, 1990 — Defendant is charged with a violation of the Uniform Firearms Act.

The offense occurred when defendant was stopped in York Township by Officer Ruth because he failed to use his left-turn signal in making a turn at 1:57 a.m. on August 19, 1989. The police officer testified that it was his intention to give defendant a warning rather than a traffic citation.

When defendant got out of the vehicle voluntarily, the officer saw what appeared to be a gun in defendant's right hip pocket. The bulge in the right hip pocket turned out to be a .25-caliber Baretta with nine rounds of ammunition.

The police officer advised defendant of his *Miranda* rights at the scene and later testified that he advised him of his *Miranda* rights at the police station as well.

Defendant stated that he had no license; however, on cross-examination it was established that he meant that he had no driver's license.

After the gun was found, apparently defendant stated that he did not have a permit for the gun either. The officer stated on cross-examination that this statement was made at the scene.

Defendant testified in this proceeding and stated that he did not get out of the vehicle voluntarily, but was told to get out. Whether he was ordered out or got out voluntarily makes no difference. See *Pennsylvania v. Minns,* 434 U.S. 106 (1977). Defendant admitted that he stated he had no license. He further stated that the warning concerning the traffic violation was given to him at the police station when he was first advised of his *Miranda* rights and first advised why he was stopped.

An added objection as to the lawfulness of this arrest occurs because the Chief of Police of York Township on July 19, 1989, had issued a directive to his police officers to issue more written warnings for obvious mechanical defects and motor vehicle violations. It was suggested that the patrolman would issue at least five warnings per eight-hour shift.

Officer Ruth said that he had trouble finding five warning stops during an eight-hour shift and on that particular day he had issued three warnings.

Our first inquiry is whether or not probable cause existed for the police officer to make the stop. We find the police officer's testimony that defendant did not utilize his turn signal to be credible; therefore, he had probable cause to stop defendant.

We further find that the police officer was justified in making a warrantless search when he saw as he testified what appeared to be a gun in the right hip pocket of defendant's pants. He was further justified in engaging in the warrantless search because it was necessary for him to take the gun for his own protection under these circumstances. See *Terry v. Ohio,* 392 U.S. 1 (1968).

The weapon search is based totally upon independent probable cause because the officer personally saw the weapon after he made the initial stop, having personally witnessed a traffic violation.

We accept the policeman's statement that as soon as he saw the weapon and took it into his custody that he gave defendant his *Miranda* warnings; therefore, any statements made by defendant would be admissible as evidence in this case.

Finally, defense argues that the charges should be dismissed because there existed in York Township a "quota system" that violated 71 P.S. §2001-002;

that because of the "quota system" the original stop was unlawful, the arrest unlawful, and the physical evidence and incriminating statements were illegally obtained.

Clearly, York Township had a "quota system" in effect at the time of the offense in question. The "system" was created by special order no. 2-89, dated July 19, 1989, a month before this incident. The directive required all uniformed patrol officers to initiate five written warnings each shift; written warnings were to be for valid violations and were for officer-initiated events. The purpose given for this order is stated to insure that more traffic violators are stopped and thus to reduce the accident rates. The laudable policy articulated cannot make lawful the intrusive conduct the legislature intended to prohibit by enacting 71 P.S. §2001.

Clearly, any tickets or citations issued in violation of the act are unenforceable under section 2002; however, this applies to motor vehicle tickets and citations only. See *Woolston v. Cutting,* 103 Pa. Commw. 217, 474 A.2d 698 (1984).

The police officer in this particular case indicated that he rarely, if ever, stops people for turn-signal violations; hence, he was at the time acting pursuant to the "quota system" that had been established within his jurisdiction.

Section 2001 of 71 Pa.C.S. provides:

"No political subdivision or agency of the Commonwealth shall have the power or authority to order, mandate, require or in any other manner, directly or indirectly, suggest to any police officer . . . that said police officer . . . shall issue a certain number of traffic citations, tickets or any other type

of citation on any daily, weekly, monthly, quarterly or yearly basis.''

Section 2002 of 71 Pa.C.S. provides:

''Any tickets or citations issued in violation of this act shall be unenforceable, null and void.''

A reading of this statute clearly indicates that the legislature intended the statute to only apply to motor vehicle violations; hence, we shall not expand the application of 71 P.S. §2001 et seq. to violations of the Criminal Code for which defendant is charged in this proceeding.

Having found the police officer acted with probable cause both in making the initial stop because of the violation of the Motor Vehicle Code and conducting the search because independent probable cause existed when he became aware of the gun, we feel the case is controlled by the recent Superior Court decision of *Commonwealth v. Haupt,* 389 Pa. Super. 614, 567 A.2d 1047 (1989).

Defendant's motions to suppress and to quash are refused.